

The following constitutes the order of the Court.
Signed: March 30, 2020

_____
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>CYNTHIA CREWS,<br>      Debtor. | Case No. 11-45982 CN<br>Chapter 13 |
| CYNTHIA M. QUINTANILLA,<br>      Plaintiff,<br>vs.<br>CARL M. CREWS,<br>      Defendant. | Adversary No. 19-4027 CN<br>**MEMORANDUM DECISION AFTER TRIAL** |

On February 12, 2020, this court conducted a trial in this adversary proceeding. All appearances were noted on the record. The following constitutes this court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052(a)(1).

Plaintiff Cynthia Quintanilla ("Quintanilla") and defendant Carl. M. Crews ("Crews") are ex-spouses who divorced in 2010. While both parties were represented by counsel during the early stages of the dissolution action (which Quintanilla filed in February 2008), they apparently were pro se parties on December 14, 2010 when the Alameda County Superior Court entered their Dissolution Judgment. The parties' dissolution action (the "Dissolution Action") contained the usual twists and turns. Quintanilla's gross monthly income ($6,131.00) was greater than Crews' monthly income ($2,050.00), and the Alameda County Superior Court (by order dated February 9, 2010) awarded him

1

temporary monthly spousal support of $416. The parties had two minor children and Quintanilla was awarded full physical custody and child support. The parties asserted community property interests in four properties: the marital residence (3440 Oak Knoll Boulevard, Oakland), rental properties at 6325 MacArthur Boulevard, Oakland, and 852 Dolores Street, San Leandro, and property located at 221 Virginia Street in Hayward where Quintanilla operated an adult care boarding facility. Crews owned Oak Knoll as his separate property before the parties married, and he conveyed fee title to Quintanilla in 2002 to help smooth over certain marital indiscretions. During the Dissolution Action, the parties may have disputed the characterization of these properties and the family businesses, and one of Crews' attorneys asserted that Crews was entitled to a "right of reimbursement" for Oak Knoll. While these (and other issues) were raised in the Dissolution Action, there is no evidence indicating that the Superior Court formally addressed them. Instead, the parties voluntarily divided their real and personal property assets and resolved their child and spousal support obligations via a consensual Dissolution Judgment. The Dissolution Judgment (Exhibit 1) is a 17 page Judicial Council of California form completed by the parties. In pertinent part, the Dissolution Judgment (see paragraph 1 of the "Property Order Attachment to Judgment") awarded to Quintanilla fee title to all of the real properties along with the furniture in those properties, certain vacation timeshares, the family businesses, including their inventory and assets, and her jewelry and the vehicles in her possession. This award was "subject to an equalizing, non-taxable payment as stated herein below." Crews received the furniture and jewelry in his possession, a 1973 Porsche, and 1998 Mercedes Benz.

Paragraph 3 of the Property Order Attachment addressed the equalization payment referenced in paragraph 1. Paragraph 3 states that Quintanilla shall pay Crews "108,000.00 payable as follows: nontaxable payment of $3000 per month, commencing August 1, 2010 over 36 months." The Dissolution Judgment also contained a "Spousal, Partner Or Family Support Order Attachment" in which both parties waived spousal support. Paragraph 10 of this Attachment states that "Spousal support has been waived by both parties in final settlement of all issues. [Crews] receives a disproportionate share of property buy out in lieu of spousal support." The parties signed a stipulation acknowledging that they agreed to the Dissolution Judgment's terms and requested that

The Superior Court enter it, which it did.

During trial, neither Crews nor Quintanilla coherently explained how they determined the amount and duration of the equalization payments. Quintanilla testified that Crews proposed this amount to her attorney and that it may have reflected the marital community's equity interest in the Oak Knoll property, which equity (via cash-out refinances) was apparently used to renovate that property and help purchase some of the other real properties. Quintanilla stated, however, that she knew little about the value of the Oak Knoll property, and this court concludes that her entire testimony on this issue is conjecture.[1] Crews' testimony was equally unenlightening. He stated that Quintanilla's attorney presented him with the terms, which he believed were derived in part from the Disso Master program.[2] While he acknowledged that he waived spousal support, he stated that he did so because he believed that Quintanilla would live up to her end of the bargain (i.e., make the $3,000 monthly payments). In other words, Crews was more than willing to accept these payments, which would have more than doubled his monthly income, regardless of their character. Both Crews and Quintanilla were unaware how a bankruptcy filing could affect Crews' right to collect these payments.

The documentary evidence also does not explain these terms. Neither the Dissolution Action pleadings introduced into evidence nor the bankruptcy schedules filed in this court reveal any equity in the real properties, and the total value of the remaining community property (as listed by Quintanilla in her soon to be filed Chapter 13 and as testified to by Crews) was far less than $108,000.[3] Nor could Quintanilla afford these monthly payments, since her net income was $4,713.00 (as listed in the Spousal Support Order Attachment).[4] Quintanilla made only one

---

[1] Given the amount of the equalization payments and the significant financial stress they imposed on her, Quintanilla's inability to explain their calculation is surprising.

[2] Quintanilla's family law attorney did not testify at trial.

[3] Quintanilla's most significant asset was her ACERA retirement account, which was her separate property.

[4] Her soon to be filed Chapter 13 listed substantially different gross income and expense amounts, but with the same result: little excess income to make such a large monthly payment to

3

MEMORANDUM OF DECISION AFTER TRIAL
Case: 19-04027    Doc# 38    Filed: 03/30/20    Entered: 03/30/20 15:34:58    Page 3 of 13

$3,000/month payment to Crews.

Quintanilla filed a Chapter 13 bankruptcy in August 2011. She listed her debt to Crews on her Bankruptcy Schedule F as a dischargeable obligation representing the "Amount ... awarded ex-husband Carl Crews to equalize the community property based [on] the marital settlement between Debtor and ex-husband (stipulated judgment)." Her Chapter 13 plan proposed monthly payments of $300, and did not treat the equalization payments as a non-dischargeable debt. Crews timely filed a proof of claim which asserted that the equalization payments constituted a priority, non-dischargeable domestic support obligation as defined by Bankruptcy Code § 101(14A). Quintanilla objected to his proof of claim, and the parties ultimately stipulated to return to Alameda County Superior Court to resolve this issue (the "Stipulation"). The Stipulation's recitals and terms are illuminating. The Stipulation, which the parties executed in early March 2012, provides in pertinent part:

> "Creditor filed on July 7, 2011, a claim (Claim No. 7) in Debtor's Chapter 13 bankruptcy case alleging that Debtor owes him $108,000, and alleges therein that the claim is entitled to priority as a domestic support obligation. Debtor objected to Claim 7 alleging that the amount allegedly owed by Debtor to Creditor is a community property distribution award not entitled to priority and dischargeable in Debtor's Chapter 13 case. Creditor admits that he waived spousal support as part of the stipulations made before entry of the Judgment of Dissolution, but alleges that such a waiver was based on a mistake of fact and law and that the entire amount awarded him in the Judgment of Dissolution for community property distribution is actually "in the nature of support" and that he is entitled to claim the $108,000 allegedly owed by Debtor as a domestic support obligation. The parties agree the issue of whether all, part or none of the community property distribution is "in the nature of support" or "in lieu of support" as well as related issues are best determined by the Superior Court of California, County of Alameda, where the Judgment of Dissolution was entered due to the expertise of the Family Law Court in such matters.
>
> THE PARTIES TO THIS STIPULATION HEREBY STIPULATE AND AGREE AS FOLLOWS:
>
> 1.  Debtor and Creditor agree to request that the Superior Court of California, County of Alameda ("Family Law Court"), set aside the Judgment of Dissolution entered in Case No. RF08370376 on December 10, 2010, on the basis of mutual mistake of fact and law by the parties, except for the entry of the dissolution of the marriage and custody of the minor children of the marriage. Creditor will file the motion to set aside Judgment of Dissolution within 21 days from the

---

Crews. There was no testimony regarding the accuracy of Quintanilla's Schedules I and J.

        date the Stipulation is approved by the Bankruptcy Court.

2.    Debtor will pay Creditor $450 per month as temporary spousal support for six months on or before the 15th day of each calendar month, commencing March 15, 2012.

3.    The parties agree that the waiver of spousal support by Creditor may be set aside by the Family Law Court because of mutual mistake of fact and law by the parties.

4.    Any award of spousal and/or child support shall be from January 1, 2011 and Debtor shall be entitled to credit for any payments to Creditor on or after January 1, 2011, including the temporary spousal support mentioned in paragraph 2 hereinabove. The date to determine the value of the community property for distribution between the parties shall be January 1, 2011. The current income of the parties shall be used to determine any support to be awarded.

5.    The Family Law Court shall determine spousal support, child support and community property distribution due on and after January 1, 2011, if any.

9.    In the event the Family Law Court denies the motion to set aside the Judgment of Dissolution, this Stipulation shall be null and void and objection filed by Debtor to Creditor's Claim No. 7 shall be immediately set for trial again in the Bankruptcy Court.

10.    Debtor stipulates that approval of this Stipulation by the Bankruptcy Court may include relief from the automatic stay for the purpose of setting aside the Judgment of Dissolution and proceeding to have the Family Law Court determine the issues of support and distribution of the community property of the marriage.

11.    Within 10 days of entry of an order by the Family Law Court setting aside the Judgment of Dissolution, Creditor shall withdraw Claim 7 and the Objection to the Confirmation of the Plan filed by Creditor.

12.    Each party shall bear their own attorneys' fees and costs incurred related to this Stipulation, except as may be awarded to one of the parties hereto by the Bankruptcy Court in case of a breach of this Stipulation."

While Crews did file a motion to modify the Dissolution Judgment in Superior Court, nothing became of it. The motion was continued several times and eventually was dropped by the Superior Court on January 22, 2013 when neither party attended a continued hearing. Moreover, Crews ignored paragraph 11 of the Stipulation and withdrew his proof of claim (and his objection to plan confirmation) on June 19, 2012, resulting in the confirmation of Quintanilla's second amended

5

MEMORANDUM OF DECISION AFTER TRIAL
Case: 19-04027   Doc# 38   Filed: 03/30/20   Entered: 03/30/20 15:34:58   Page 5 of 13

Chapter 13 plan by order dated July 2, 2012.[5] Quintanilla proceeded to make her plan payments and, on May 15, 2014, filed her "Debtor's Certification in Support of Discharge" (the "Certification") in which she averred that she had not "been required to pay a domestic support obligation as that term is defined in 11 U.S.C. § 101(14A) by any order of a court or administrative agency or by any statute." The Certification was served on all creditors and provided them with a 21 day "scream or die" notice to object to it. No one objected, and this court entered Quintanilla's Chapter 13 discharge on June 10, 2014. Crews was listed on the BNC service list for the Certification at three addresses: The Oak Knoll property (where he did not reside), P.O. Box 2116 in Castro Valley, and the office address of his one-time and present counsel, Damian Rickert.[6]

In May 2018, Crews renewed his efforts to collect his equalization payments by filing a motion in Alameda County Superior Court to compel Quintanilla to pay him the remaining $105,000 due under the Dissolution Judgment. In his declaration in support of the motion, Crews states that he "is only seeking his interest of [sic] property received in the dissolving of the party's marriage several years ago." After several hearings, the Superior Court (by minute order entered on November 26, 2018) requested that this court determine whether the equalization payments constituted a domestic support obligation.[7]

Quintanilla filed this adversary proceeding on May 15, 2019 seeking declaratory relief that Crews is barred from collecting the equalization payments. She contends that 1) she discharged her equalization payment obligation; 2) Crews' attempt to litigate this issue is barred by the doctrine of issue preclusion; and 3) the doctrine of laches further bars Crews from collecting this debt.

**I. Quintanilla Has Discharged the Equalization Payments**

Put simply, the Bankruptcy Code divides family law payment obligations into two categories:

---

[5] The court takes judicial notice of Crews' withdrawal of his proof of claim and the order confirming the second amended Chapter 13 plan. *See* Federal Rule of Evidence 1001.

[6] Rickert was also served by email under this court's ECF protocol.

[7] The court takes judicial notice of the Alameda County Superior Court minute order, which is an exhibit to the Motion to Reopen Case and Request Ruling on $108,000 Property Equalization on Claim 7 filed by Quintanilla (Docket Entry #113).

6

those that are domestic support obligations ("DSO") under Bankruptcy Code § 101(14A) which are non-dischargeable in Chapter 7 and 13 cases; and those that are not DSOs, which, while non-dischargeable in Chapter 7s, are dischargeable in Chapter 13 cases. *See* Bankruptcy Code §§ 101(14A), 523(a)(5), 523(a)(15), 1328(a)(2). Crews has the burden of demonstrating by a preponderance of the evidence that the equalization payment obligation was a DSO. *See Maudsley v. Maudsley* (In re Maudsley), 2006 Bankr.LEXIS 4833, at *24-25 (B.A.P. 9th Cir. Jan. 20, 2006). Crews has not met this burden.

The term "Domestic Support Obligation" is defined in Bankruptcy Code § 101(14A):

"The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is -

   (A) owed to or recoverable by -

      (I) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

      (ii) a governmental unit;

   (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such or such child's parent, without regard to whether such debt is expressly so designated;

   (C) established or subject to establishment before, on , or after the date of the order for relief in a case under this title, by reason of applicable provisions of -

      (I) a separation agreement, divorce decree, or property settlement agreement;

      (ii) an order of a court of record; or

      (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debtor."

The element at issue herein is whether the equalization payments were in the nature of spousal support. This question is a matter of bankruptcy law, and the intent of the parties when the settlement agreement (here, a consensual Dissolution Judgment) is executed is dispositive. *See In re*

7

1 *Sternberg*, 85 F.3d 1400 (9th Cir. 1996); *overruled on other grounds* by *In re Bammer*, 131 F.3d 788 (9th Cir. 1997). Bankruptcy courts frequently consider several factors when determining intent, including:

    1) Whether the recipient spouse actually needed spousal support at the time of the divorce;

    2) Whether there was an imbalance in the relative income of the parties;

    3) The amount and outcome of any property division;

    4) Whether the obligation terminates on the payee's death or remarriage;

    5) The number and frequency of payments;

    6) Whether the agreement contained a spousal support waiver;

    7) Whether the parties could modify the obligation or enforce it through contempt proceedings;

    8) The tax treatment of the obligation; and

    9) Whether the parties labeled the payments.

*Sternberg, supra* at 1405.

Crews has not persuaded this court that the equalization payments were in the nature of spousal support. While Crews certainly needed to supplement his disability payments in some fashion, his temporary support payments were only $416/month. Given this, no one credibly explained how the $3,000 amount and the payments' duration were determined. At $416/month, the $108,000 amount represented more than 20 years of payments without any present value calculation to reflect a compressed three year payout. Given that 1) Quintanilla's Disso Master net income was not significantly greater than Crews' (tax free) disability payments, and 2) her personal expenses exceeded his, there was no evidence justifying such large support payments. Moreover, these payments were tax-free and did not terminate upon his death or remarriage, Crews explicitly waived spousal support (after having received temporary support during the latter portion of the Dissolution Action), and the parties labeled these payments as equalization payments. While Crews was happy to accept these terms, it is his burden to demonstrate that they were in the nature of support. He has

not.[8]

## II. QUINTANILLA'S AFFIRMATIVE DEFENSES

While this court's dischargeability determination moots Quintanilla's laches and issue preclusion arguments, the court addresses them to complete the record. Both affirmative defenses are rejected. Laches requires Quintanilla to demonstrate by a preponderance that Crews did not diligently pursue his DSO argument and that she was prejudiced by the delay. *Kansas v. Colorado*, 514 U.S. 673, 687, 115 S. Ct. 1733, 1742 (1995). Notwithstanding Crews' failure to pursue to conclusion his motion to modify the Dissolution Judgment, Quintanilla has not demonstrated that she was prejudiced by the delay. Quintanilla contends that Crew's inaction impeded her ability to present evidence necessary to defeat his claim. The court disagrees. Crews timely filed his proof of claim in her Chapter 13, and Quintanilla promptly objected to his characterization of the equalization payments. The Stipulation was executed in March 2012, and the parties were soon thereafter litigating the merits of Crews' motion to modify in Alameda County Superior Court. Quintanilla, who was represented by counsel in her Chapter 13, had the opportunity and incentive to investigate his claim and preserve the fruits of her investigation when the relevant events were still fresh in her mind. No evidence indicated that she did so.

Quintanilla also contends that her inability to modify the equalization payment obligation (should it be a DSO) constitutes actionable prejudice. California Family Code § 3651(1) states in pertinent part that "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate.[9]" *See also In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 595 [124 Cal.Rptr.2d 342]. Since the equalization payments were all due by August 2013, Quintanilla cannot modify this obligation.

Quintanilla's argument is unavailing. Crews promptly filed his proof of claim, Quintanilla objected to it, and she could have addressed this deadline by including appropriate language in the

---

[8] The paucity of evidence also leaves this court ill-equipped to determine whether some portion of the $3,000/month payment falls within the DSO ambit.

[9] See also Cal.Family Code §§ 3653, 3651, 3603.

Stipulation or by filing a protective motion in Superior Court to hedge her bets on dischargeability. In this instance, it was Quintanilla who sat on her rights.

The court also rejects the issue preclusion affirmative defense.[10] Issue preclusion bars the re-litigation of an issue decided in an earlier judicial or administrative proceeding, provided that the losing party had a full and fair opportunity to litigate the issue in the prior proceeding. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 66 L. Ed. 2d 308, (1980); *Mermelstein v. Elder (In re Elder)*, 262 B.R. 799, 806 (C.D. Cal. 2001). Federal courts generally treat the preclusive effects of federal judgments or orders as a matter of federal law. *In re Zaharescu*, 2013 U.S. Dist. LEXIS 99423, 2013 WL 3762285, at *2 (C.D. Cal. July 11, 2013).

Quintanilla argues that the entry of her Chapter 13 discharge bars Crews from contesting the dischargeability of the equalization payments. She contends that her Certification put Crews on notice of her assertion that she "ha[d] not been required to pay a domestic support obligation," and Crews' failure to object to it bars him from litigating this issue.

The federal doctrine of issue preclusion contains four elements: 1) The issue sought to be precluded must be the same as that involved in the prior action; 2) The issue must have been litigated in the prior action; 3) The issue must have been determined by a valid and final judgment; and 4) The determination must have been essential to the final judgment. *Genel Co. v. Bowen (In re Bowen)*, 198 B.R. 551, 555 (B.A.P. 9th Cir. 1996). Quintanilla bears the burden of demonstrating each of these elements by a preponderance of the evidence. To demonstrate that her DSO contention was "actually litigated," Quintanilla must prove that Crews had the opportunity to litigate the merits of this issue and chose not to do so. *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995). Quintanilla falls short here, because she has not established that she served the Certification on Crews. Absent this, Crews did not have the opportunity to dispute her allegation that she had no DSO liability.

The Certification was sent to Crews at three addresses: the Oak Knoll address, a Castro

---

[10] Issue preclusion is an affirmative defense and the party asserting preclusion has the burden of proof. *See* Federal Rule of Bankruptcy Procedure 7008; *see also In re Naemi* 128 B.R. 273, 277(Bankr.S.D.Cal. 1991).

10

MEMORANDUM OF DECISION AFTER TRIAL

Valley P.O. Box, and Rickert's law office address. Quintanilla has not demonstrated that this service was reasonably calculated, under all of the circumstances, to notify Crews of his right to object to the Certification. Crews was not residing at the Oak Knoll property in May 2014, and Quintanilla has not demonstrated that Crews was using the P.O. Box at that time. Nor has Quintanilla proven that service on Rickert was sufficient. Federal Rule of Bankruptcy Procedure 7004 authorized Quintanilla to serve Crews under the applicable laws of the State of California. Service on a person's attorney may constitute good service under Cal Civ. Proc., § 416.90. "The question is whether service can be upheld on the theory that a close connection between the agent and the party made it highly probable the party would receive actual notice of the service of process on the agent on his or her behalf." *Estate of Moss* (2012) 204 Cal.App.4th 521, 522 [139 Cal.Rptr.3d 94]. Quintanilla has no demonstrated that Rickert was such an agent for Crews in May 2014. Crews retained Rickert in 2011 to object to plan confirmation, file his proof of claim, and litigate its allowance. Rickert withdrew the proof of claim on June 19, 2012 and Quintanilla's Chapter 13 plan was confirmed days later. While Rickert represented Crews in Alameda County Superior Court after the parties returned there (post-Stipulation) in 2012, Crews' motion to modify the Dissolution Judgment was dropped from the Superior Court's calendar by minute order dated January 22, 2013 due to all parties' non-appearance. When Crews resurrected his Superior Court motion to modify in 2018, he did so pro se. "An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney." *GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1246. While Rickert obviously represents Crews in this adversary proceeding, Quintanilla has not adequately demonstrated that their attorney-client relationship continued uninterrupted after the Superior Court dropped the motion to modify from its calendar in January 2013. Given Crews' limited income, this court can just as easily conclude that he discharged Rickert at or around that time because he could not pay his fees.

The court's analysis of Rickert's duties under the Rules of Professional Conduct is also unavailing. An attorney owes limited duties to a former client, and keeping the former client apprised of the status of ongoing litigation does not appear to be one of them. Compare Rules 1.4

11

MEMORANDUM OF DECISION AFTER TRIAL
Case: 19-04027    Doc# 38    Filed: 03/30/20    Entered: 03/30/20 15:34:58    Page 11 of 13

and 1.9 of the California Rules of Professional Conduct.

Accordingly, Quintanilla has not demonstrated that service on Rickert "made it highly probable" that Crews would receive actual notice of the Certification.

Quintanilla shall submit an appropriate Order consistent with this memorandum decision.

**\* \* \* END OF ORDER \* \* \***

**COURT SERVICE LIST**

Recipients are ECF participants